IN THE UNITED STATES DISTRICT
COURT NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK DEE PEETE, | ) | Case No. 4:20-CV-02185-JRK |
| | ) | |
| Petitioner, | ) | JUDGE JAMES R. KNEPP II |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| JAMES HAVILAND, Warden, | ) | ARMSTRONG |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    INTRODUCTION

Petitioner, Derrick Dee Peete ("Mr. Peete"), seeks a writ of habeas corpus under 28

U.S.C. § 2254. (ECF No. 1). Mr. Peete is serving a sentence of 15 years to life for: (1) one

first-degree felony count of murder in violation of R.C. §§ 2903.02(A) and (D), and R.C. §

2941.145; (2) one third-degree felony count of tampering with evidence in violation of R.C.

§ 2921.12(A)(1) and (B); (3) one second-degree felony count of improperly discharging a

firearm into a habitation with a firearm specification in violation of R.C. §§ 2923.161(A)(1)

and (C); (4) one first-degree felony count of attempted aggravated murder in violation of R.C.

§§ 2923.02(A) and (E)(1), R.C. §§ 2903.01(A) and (F), and R.C. § 2941.145; (5) one second-

degree felony count of felonious assault in violation of R.C. §§ 2903.11(A)(2) and (D)(1)(a)

and R.C. § 2941.145; and (6) one third-degree felony count of having weapons under a

disability in violation of R.C. § 2923.13(A)(3) and (B).

Mr. Peete asserts two grounds for relief. Respondent, Warden James Haviland

("Warden"), filed an answer/return of writ on March 2, 2021. (ECF No. 9).  Mr. Peete filed a

traverse on April 26, 2021. (ECF No. 11). The Warden filed a reply to Mr. Peete's traverse on May 4, 2021. (ECF No. 12).

This matter was referred to me on September 2, 2022 under Local Rule 72.2 to prepare a report and recommendation on Mr. Peete' petition. (*See* ECF non-document entry dated September 2, 2022). For the foregoing reasons, I recommend that the Court DENY Mr. Peete's petition. I further recommend that this Court not grant Mr. Peete a certificate of appealability.

## II.   RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Eleventh District summarized the facts as follows:

> {¶2} In November 2012, a six-count indictment was returned against appellant, charging him with aggravated murder, tampering with evidence, improperly discharging a firearm into a habitation, attempted aggravated murder, felonious assault, and having a weapon while under a disability based upon an incident in which two separate victims were shot during an exchange of gunfire. Four of the six counts had firearm specifications.

> {¶3} Beginning in December 2012, appellant's trial counsel moved for, and was granted, four continuances of pretrial hearings. In October 2013, his counsel moved to continue the jury trial, scheduled for November 12, 2013. Counsel requested that the trial be postponed until after final disposition of a pending federal case against appellant. The motion was overruled and appealed. The appeal was ultimately dismissed for lack of a final appealable order, but trial was postponed until March 2014.

> {¶4} Approximately four days before trial, consistent with plea negotiations, the state moved to amend the first count of the indictment from aggravated murder to murder,

a first-degree felony under R.C. 2903.02(A), and dismissal of the four firearm specifications. The motion was granted and appellant pleaded guilty to the amended indictment.

{¶5} The court accepted the guilty plea and found him guilty on all six charges, as amended. Appellant waived his right to a presentencing investigation. The trial court accepted the joint sentencing recommendation and ordered appellant to serve a prison term of fifteen years to life on the murder charge. The court then imposed separate terms for the remaining five charges to be served concurrently with each other and the life sentence on the murder charge.

{¶6} Over four years later, in September 2018, appellant moved to withdraw his guilty plea under Crim.R. 32.1. First, appellant maintained that his open court plea was deficient because the entire plea agreement was not read into the record and the trial court did not inform him of the total maximum sentence he could have received on all six charges. Second, he argued that trial counsel did not provide effective assistance because she coerced him into accepting the plea, failed to inform him of the type of evidence the state would have to present to prove prior calculation and design under the attempted aggravated murder count, and did not inform him that two of the six charges could merge for purposes of sentencing. Appellant's motion is supported with an affidavit, transcripts of the plea and sentencing, and disposition of trial counsel's disciplinary proceedings from an unrelated case.

{¶7} Within three days the trial court summarily overruled the motion.

(ECF No. 9-1, Exhibit 24); *State v. Peete*, No. 2018-T-0094, 2019 WL 2579091, 2019-Ohio-2513 (11th Dist. June 24, 2019).

## III.  PROCEDURAL HISTORY

### A.  <u>State Court Plea</u>

On November 11, 2012, Mr. Peete was indicted in the Trumbull County Court of Common Pleas on the following offenses: (1) one unspecified-felony count of aggravated murder with a firearm specification in violation of R.C. §§ 2903.01(A) and (F) and 2941.145; (2) one third-degree felony count of tampering with evidence in violation of R.C. §§ 2921.12(A)(1) and (B); (3) one second-degree felony count of discharging a firearm at or into a habitation with a firearm specification in violation of R.C. §§ 2923.161(A)(1) and (C) and R.C. § 2941.145; (4) one first-degree felony count of attempted aggravated murder with a

firearm specification in violation of R.C. §§ 2923.02(A) and (E)(1), R.C. § 2903.01(A) and (F), and R.C. § 2941.145; (5) one second-degree felony count of felonious assault with a firearm specification in violation of R.C. §§ 2903.11(A)(2) and (D)(1)(a) and R.C. § 2941.145; and (6) one third-degree felony count of having weapons while under disability in violation of R.C. §§ 2923.13(A)(3) and (B). (ECF No. 9-1, Exhibit 1). On November 19, 2012, Mr. Peete entered pleas of not guilty to all charges. (ECF No. 9-1, Exhibit 2).

While not included in the record for this proceeding, it appears from the Eleventh District Court of Appeals' decision that Mr. Peete's counsel requested and was granted several pretrial continuances. (ECF No. 9-1, Exhibit 24); *State v. Peete*, No. 2018-T-0094, 2019 WL 2579091, 2019-Ohio-2513 ¶ 3.)  The case was set for trial on November 12, 2013. (ECF No. 9-1, Exhibit 7). On October 17, 2013, Mr. Peete, through counsel, filed a motion to continue the trial. *Id*. The trial court denied Mr. Peete's motion on October 23, 2013. *Id*.

On October 28, 2013, Mr. Peete, through counsel, filed a notice of appeal of the trial court's ruling denying his motion to continue the trial. (ECF No. 9-1, Exhibit 7). On October 31, 2013, the State filed an emergency motion to dismiss Mr. Peete's appeal. On November 18, 2013, the Eleventh Appellate District dismissed Mr. Peete's interlocutory appeal for lack of a final, appealable order. (ECF No. 9-1, Exhibit 8). Nonetheless, it appears that the trial was continued to March 2014.

On March 6, 2014, the parties appeared before the trial court for a final pre-trial conference. (ECF No. 9-1, Exhibit 10). In an order following the pre-trial conference, the trial court denied Mr. Peete's motion to continue the pre-trial conference and stated that no further continuances would be granted in the case. *Id*. The trial court also ordered that "[t]he matter is to proceed to trial without delay." *Id*.

4

On March 20, 2014, Mr. Peete pled guilty to all counts in return for the state amending the unspecified-felony aggravated murder charge to a first-degree murder charge; dropping the firearm specification; and agreeing to recommend a total prison sentence of 15 years to life, with the sentence to run concurrently to his sentence in a federal case, *United States v. Derrick Peete*, 4:13-cr-189-DCN-3003. (ECF No. 9-1, Exhibit 14). In the plea agreement, Mr. Peete stated that he was entering into the plea agreement "with full understanding of my legal rights under the facts and circumstances as explained [to] me by my attorney and the Court." *Id*. Mr. Peete also stated that he was "satisfied with my attorney, and that he/she has effectively and diligently represented me." *Id*. During the plea hearing, Mr. Peete similarly stated that he understood the charges he was faced with, was satisfied with his counsel, and was entering into the plea without coercion. (ECF No. 9-2).

On March 28, 2014, the trial court sentenced Mr. Peete to a term of 15 years to life on Count One (aggravated murder with a firearm specification); a term of 36 months each on Counts Two (tampering with evidence) and Six (having weapons while under a disability); and a term of eight years each on Counts Three (improperly discharging a firearm at or into a habitation with a firearm specification); Four (attempted aggravated murder with a firearm specification); and Five (felonious assault with a firearm specification). (ECF No. 9-1, Exhibit 15). The trial court ordered that Mr. Peete would serve all sentences concurrently, for a total sentence of 15 years to life. *Id*. The trial court furthered ordered that Mr. Peete would serve his sentence concurrently to the sentence imposed upon him in the federal proceeding. *Id*.

On May 13, 2014, the trial court entered an amended sentence, which did not substantively change Mr. Peete's sentence. (ECF No. 9-1, Exhibit 16).  Mr. Peete did not appeal his sentence or take any further action with respect to his guilty plea at that time.

**B.  Motion to Withdraw Guilty Plea**

On September 17, 2018, more than four years after his sentence was imposed, Mr. Peete, acting *pro se*, filed a motion to withdraw his guilty plea pursuant to Ohio Rule of Criminal Procedure ("Ohio Crim. R.") 32.1.[1] (ECF No. 9-1, Exhibit 17). In his motion, Mr. Peete argued that his guilty plea and sentence were unconstitutional and invalid for three reasons: (1) the trial court failed to comply with Ohio Crim R. 11(C) because it did not advise him of the maximum sentence he could face in return for his guilty plea; (2) the plea did not comply with Ohio Crim. R. 11(F) because the underlying plea agreement was not stated on the record in open court; and (3) Mr. Peete was denied the effective assistance of counsel in violation of the Sixth Amendment. *Id*.

With respect to his ineffective assistance of counsel claim, Mr. Peete argued that he was coerced into pleading guilty by his trial counsel because his trial counsel was unprepared for the upcoming trial and wanted to "save her own skin." *Id*. Mr. Peete also argued that his trial counsel misled him about whether the prosecution's plea offer was the best offer he could obtain, and also misled him about the strength of the prosecution's case against him. *Id*. Finally, Mr. Peete stated that he had only recently learned that his trial counsel had been subject to disciplinary actions for failing to show up to court hearings and other scheduled meetings during approximately the same time period that his trial counsel would have been preparing for trial. *Id*.

On September 20, 2018, the trial court denied Mr. Peete's motion to withdraw his guilty plea. (ECF No. 9-1, Exhibit 19). On October 11, 2018, Mr. Peete filed a timely notice

---

[1] Mr. Peete purported to bring his motion under Ohio Crim. R. 11. (ECF No. 9-1, Exhibit 17). However, Ohio Crim. R. 32.1 is the provision governing motions to withdraw guilty pleas. The Eleventh Appellate District treated Mr. Peete's motion as a motion under Crim R. 32.1. (ECF No. 9-1, Exhibit 24).

of appeal. (ECF No. 9-1, Exhibit 20). In his appellate brief, Mr. Peete raised the following three assignments of error:

1. The trial court abused its discretion by failing to hold a hearing on appellant's motion;

2. The trial court abused its discretion by failing to explain its reasoning for denying appellant's motion; and

3. The court would deny appellant his right to appeal if it were to speculate on the trial court's reasoning and affirm its ruling.

(ECF No. 9-1, Exhibit 21).

On June 24, 2019, the Eleventh Appellate District affirmed the trial court's denial of Mr. Peete's motion to withdraw his guilty plea. (ECF No. 9-1, Exhibit 24). On July 3, 2019, Mr. Peete filed a motion for reconsideration and reconsideration *en banc*. (ECF No. 9-1, Exhibit 25). On July 29, 2019, the Eleventh Appellate District denied Mr. Peete's motion. (ECF No. 9-1, Exhibit 27).

On August 5, 2019, Mr. Peete filed a notice of appeal to the Ohio Supreme Court. (ECF No. 9-1, Exhibit 28). In his memorandum in support of jurisdiction, Mr. Peete raised the following three propositions of law:

1. The trial court abused its discretion, and in so doing denied appellant Derrick Dee Peete due process of law under both the United States and Ohio constitutions, where trial court failed to hold a hearing on his motion to withdraw his guiltplea [*sic*];

2. The trial court abused its discretion, and in so doing denied appellant Derrick Dee Peete due process of law, under both the United States and Ohio constitutions, where the trial court failed to explain its reasoning for denying appellate Peete his motion to withdraw his guilty plea;

3. The appellate court abused its discretion, and in so doing denied appellant Derrick Dee Peete due process of law, under both the United States and Ohio constitutions, where the appellate court speculated on the trial court's reasoning in affirming the trial court ruling.

(ECF No. 9-1, Exhibit 29). On October 15, 2019, the Ohio Supreme Court declined to accept

jurisdiction of the appeal. (ECF No. 9-1, Exhibit 31). One justice dissented and would have appointed counsel to represent Mr. Peete. *See State v. Peete*, 157 Ohio St. 3d 1442, 132 N.E.3d 707 (Table).

### C. Federal Habeas Action

On September 23, 2020, Mr. Peete, proceeding *pro se*, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Peete' habeas petition raises two grounds ground for relief:

1. Ineffective assistance of counsel in violation of Sixth Amendment;

   **Supporting Facts**: Hampered by legal disciplinary and personal problems, resulting in an inability to provide Habeas Petitioner Derrick Dee Peete effective assistance of counsel, Petitioner Peete's trial counsel failed to adequately prepare Peete's case for trial. Also, Peete's trial counsel committed fraud upon the trial court, and provided fraudulent misrepresentations that resulted in Peete's guilty plea being unknowing, unintelligent, and involuntary, in violation of federal due process.

2. Unknowing, unintelligent, and involuntary guilty plea in violation of due process.

   **Supporting Facts**: The State trial court failed to determine that Petitioner Derrick Dee Peete was making a plea of guilty knowingly, intelligently, and voluntarily, with an understanding of the nature of the charges and the maximum penalty involved. Both the State trial court, as well as Petitioner Peete's trial counsel, failed to convey that relevant information so that Peete could make a knowing, intelligent, and voluntary decision regarding Peete's decision to plead guilty. Also, Peete's state-court trial counsel impermissibly coerced Peete into an illegal guilty plea by purposefully misrepresenting material information, amounting to fraud upon the court. Petitioner's plea was also in violation as a result of incorrect information, failure to state maximum penalty, and place plea agreement on record.

*Id*. at PageID #5-7.

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court

only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Trumbull County Court of Common Pleas sentenced Mr. Peete, and the Court takes judicial notice that Trumbull County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Peete's § 2254 petition.

### B.  Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the

petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A

10

"fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D. AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act,

11

Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court

12

identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further."

*Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

Mr. Peete asserts that habeas relief is warranted because: (1) he was denied his right to effective assistance of counsel under the Sixth Amendment; and (2) his guilty plea was not knowing and voluntary in violation of constitutional due process requirements. The Warden responds that: (1) Mr. Peete's claims are time-barred because he did not comply with AEDPA's one-year statute of limitations; (2) Mr. Peete has procedurally defaulted on his claims; and (3) Mr. Peete's claims fail on the merits. As set forth below, I agree that Mr. Peete's claims are time-barred. I also agree that he has procedurally defaulted on some, but not all, of his claims. Finally, I agree that Mr. Peete's claims fail on the merits.

### A. Timeliness

The Warden first argues that Mr. Peete's petition its time-barred in its entirety because Mr. Peete did not file it within AEDPA's one-year statute of limitations. The Warden's argument is well-taken.

#### 1. AEDPA's Statute of Limitations

AEDPA imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus. See 28 U.S.C. § 2244(d)(1). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petitioner's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009). The one-year limitations period begins to run from the latest of four dates:

(A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Cases become final for purposes of § 2244(d)(1)(A) when the time to file an appeal has expired. *See Lawrence v. Florida*, 549 U.S. 327, 333 (2007). The trial court entered Mr. Peete's sentence on April 2, 2014 and entered his amended sentence on May 14, 2014. (ECF No. 9-1, Exhibits 15-16). Ohio Rule of Appellate Procedure 4 provides that a party has 30 days from entry of an order to file a notice of appeal. Ohio R. App. P. 4(A)(1). Assuming for the sake of argument Mr. Peete's amended sentence is the relevant one for purposes of calculating the statute of limitations, he had until June 13, 2014 to file an appeal to the Eleventh Appellate District, which he did not do. Thus, the statute of limitations began running under Section 2244(d)(1)(A), at the latest, on June 14, 2014 and expired on June 14, 2015. However, Mr. Peete did not file his habeas petition until September 23, 2020, more than five years after the statute of limitations expired.[2]

Mr. Peete argues in his traverse that the statute of limitations has not expired because it was tolled during the period while his motion to withdraw his guilty plea was pending.

---

[2] The Warden argues that the statute of limitations ran for at least 11 days between the expiration of Mr. Peete's deadline to appeal his original, April 2, 2014 sentence and the trial court's entry of his amended sentence on May 14, 2014. It is unnecessary to consider whether the statute of limitations ran at all prior to the entry of Mr. Peete's amended sentence, as he did not file his habeas petition until more than six years after the entry of either sentence.

(ECF No. 11, PageID # 385). It is true that a motion to withdraw a guilty plea can toll AEDPA's statute of limitations. *See Davis v. Bunting*, No. 1:15CV1048, 2016 WL 11372340, at *7 (N.D. Ohio Mar. 24, 2016), *report and recommendation adopted as modified*, 2016 WL 3475018 ("Petitioner's filing of his motion to withdraw his guilty plea on April 9, 2009 tolled the AEDPA clock."). "The tolling provision does not, however, revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (internal quotation and citation omitted); *see also Green v. Noble*, No. 4:20-cv-00555, 2021 WL 1132275, at *9 n.7 (N.D. Ohio Mar. 5, 2021), *report and recommendation adopted*, 2021 WL 1124075 (holding that motion to withdraw guilty plea did not serve to toll AEDPA statute of limitations that had already expired). Because Mr. Peete did not file his motion to withdraw his guilty plea until September 17, 2018, more than three years after the AEDPA statute of limitations expired on June 3, 2015, the motion did not prevent AEDPA's statute of limitations from expiring.

Mr. Peete next argues that the statute of limitations has not expired pursuant to § 2244(d)(1)(D) because he could not have discovered through due diligence that he was denied the effective assistance of counsel until shortly before he filed his motion to withdraw his guilty plea. (ECF No. 11, PageID # 382). The question under Section 2244(d)(1)(D) "is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care." *Townsend v. Lafler*, 99 F. App'x 606, 608 (6th Cir. 2004). "The petitioner has the burden of persuading the court that he has exercised due diligence in his search for the factual predicate of his claim." *Stokes v. Leonard*, 36 F. App'x 801, 804 (6th Cir. 2002).

Mr. Peete argues that he could not have learned earlier that his counsel was engaged

16

in "a plethora of violations of the professional rules of conduct against other clients" identical to the violations that he alleges his counsel committed in his own case. (ECF No. 11, PageID # 384). Mr. Peete's argument fails for two reasons. First, the relevant question is not whether Mr. Peete's counsel performed inadequately for other clients. Rather, the question is whether Mr. Peete's counsel rendered constitutionally inadequate representation in his own case, a question as to which Mr. Peete had direct knowledge. Mr. Peete does not adequately explain why he needed evidence that his counsel was sanctioned in an unrelated matter to determine whether his counsel's performance was deficient.

Second, even assuming that the sanctions proceedings against Mr. Peete's trial counsel could constitute an independent basis to find that his counsel was constitutionally inadequate, Mr. Peete himself submitted exhibits with his motion to withdraw his guilty plea establishing that the sanctions were a matter of public record years before Mr. Peete filed his motion. In particular, Mr. Peete cited to both the Ohio Board of Professional Conduct's recommendation to the Ohio Supreme Court that Mr. Peete's trial counsel be sanctioned, dated October 2, 2015, and a local news article regarding the disciplinary proceedings, dated July 30, 2015. (ECF No. 9-1, Exhibit 17). Yet Mr. Peete did not file his motion to withdraw his guilty plea until September 2018, more than three years after those facts unquestionably became public. Mr. Peete has not provided me with any basis to conclude that he could not have discovered them sooner through the exercise of due diligence. Accordingly, I conclude that Mr. Peete's claim is not timely under Section 2244(d)(1)(D).

### 2. *Equitable Tolling*

Because AEDPA's one-year statute of limitations is not jurisdictional, a court may still entertain an untimely petition if the petitioner is entitled to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). If a petitioner seeks equitable tolling, he must show

that: (1) he pursued his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (citing *Holland*, 560 U.S. at 649); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012). There is also an equitable exception to the one-year limitations period when a petitioner makes a "convincing showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

Mr. Peete argues that the statute of limitations should be equitably tolled because his trial counsel failed to inform him that she was not diligently preparing for his trial and that she was being subjected to sanctions by the Ohio Supreme Court for her conduct in another case.[3] For the reasons set forth above, however, I find that Mr. Peete did not pursue his rights diligently. While Mr. Peete argues that he could not have learned earlier of the sanctions proceedings against his counsel, he does not dispute that he was aware in his own case that his trial counsel requested several extensions and, ultimately, attempted to take an interlocutory appeal when the trial court denied her request to continue the trial.

And, as noted above, even assuming that the sanctions proceedings against his trial counsel constitute an independent basis for an ineffective assistance of counsel claim, Mr. Peete's own motion to withdraw his guilty plea demonstrate that the sanctions proceedings were a matter of public record years before Mr. Peete sought to withdraw his guilty plea. (ECF No. 9-1, Exhibit 17). Given those public records, Mr. Peete has failed to establish that he pursued his rights diligently by waiting until September 2018 to file a motion to withdraw

---

[3] Mr. Peete relies on a five-factor test for equitable tolling set forth in *Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001), which the Sixth Circuit applied prior to the Supreme Court's decision in *Holland*. The Sixth Circuit held in *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745 (6th Cir. 2011), that *Holland* "has replaced *Dunlap*'s five-factor inquiry as the governing framework in this circuit for determining whether a habeas petitioner is entitled to equitable tolling." *Id.* at 750. Accordingly, I will analyze whether Mr. Peete qualifies for equitable tolling under *Holland*'s two-factor test rather than *Dunlap*'s five-factor test.

his guilty plea.

Mr. Peete also has not established that an "extraordinary circumstance" that stood in his way and prevented him from filing sooner. He argues that "professional misconduct" can constitute an extraordinary circumstance justifying equitable tolling. The cases he cites, however, involved situations where an attorney acted ineffectively *in post-judgment proceedings*, thereby preventing the petitioner from timely pursuing a habeas claim. *See Holland*, 560 U.S. at 641-42, 651 (holding that unprofessional attorney conduct may constitute extraordinary circumstances in case where post-conviction counsel failed to timely file habeas petition despite petitioner's repeated communications with counsel); *Keeling v. Warden, Lebanon Corr. Inst*. 673 F.3d 452, 462 (6th Cir. 2012) (holding that "[b]oth ineffective assistance of counsel and a substantial, involuntary delay in learning about the status of their appeals may constitute extraordinary circumstances sufficient to warrant relief") (quotations omitted).

Mr. Peete, however, does not argue that post-conviction counsel failed to meet a filing deadline or failed to communicate with him about his case. Instead, he argues that his trial counsel's alleged ineffectiveness *during the trial* is an extraordinary circumstance that justifies his failure to file his habeas petition until years after the statute of limitations expired. Mr. Peete does not cite to any authority applying equitable tolling under those facts, and I conclude that Mr. Peete has not demonstrated that an extraordinary circumstance prevented him from meeting the filing deadline.

Finally, Mr. Peete does not argue that he qualifies for tolling under the "actual innocence" exception. Accordingly, Mr. Peete did not file his habeas petition within AEDPA's one-year statute of limitations and equitable tolling does not apply. I therefore

recommend that the Court deny Mr. Peete's habeas petition as time-barred. In an abundance of caution, however, I will nonetheless analyze Mr. Peete's claims on the merits as well.

**B. Mr. Peete's Claims**

**A. Ground One: Ineffective Assistance of Trial Counsel**

In his first claim, Mr. Peete asserts that he was denied constitutionally effective assistance of counsel because his counsel failed to adequately prepare for trial and coerced him into accepting a guilty plea by making affirmative misrepresentations about the strength of the State's case. The Warden responds that Mr. Peete has procedurally defaulted on this claim in its entirety and that Mr. Peete's ineffective assistance claim fails on the merits in any event. I first consider whether Mr. Peete has procedurally defaulted on the claim and then address the merits of the claim.

*1. Procedural Default*

The Warden argues that Mr. Peete procedurally defaulted on his ineffective assistance of counsel claim by failing to pursue a direct appeal of his guilty plea within the time limits established under Ohio law. The Warden also argues that the Eleventh Appellate District denied Mr. Peete's ineffective assistance of counsel claim in its entirety on *res judicata* grounds.

Ohio has a "dual-track system" for ineffective assistance of counsel claims. *Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016); *see also McGuire v. Warden*, 738 F.3d 741, 751 (6th Cir. 2013). Under this dual-track system, grounds for relief that are based on evidence wholly within the trial record must be brought on direct appeal, while claims based on evidence outside the trial record cannot be brought on direct review and must be raised in a petition for state post-conviction relief. *McGuire*, 738 F.3d at 751 (citing *State v. Cole*, 443 N.E.2d 169, 171 (1982)). In this system, res judicata bars an ineffective assistance of trial

counsel claim that is brought in a state post-conviction petition that relies on evidence within the trial record because such a claim could have been brought on direct appeal. *Id*. (citing *State v. Perry*, 226 N.E.2d 104, 108 (1967)). Ohio courts routinely apply res judicata to such claims. *Williams*, 460 F.3d at 806 (citing *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)) ("Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted.").

The Warden argues that the Eleventh Appellate District applied a res judicata bar to deny Mr. Peete's ineffective assistance claim. If true, that would mean that Mr. Peete has procedurally defaulted on the claim, as the Sixth Circuit "repeatedly held that Ohio's *res judicata* rule is an adequate and independent state procedural ground for purposes of procedural default." *Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir. 2012); *see also Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002).

I conclude, however, that the Warden's argument misreads the Eleventh Appellate District's opinion. Is true that the Eleventh Appellate District held that res judicata barred Mr. Peete's argument that his trial counsel was constitutionally ineffective in failing to inform him that some of the charges against him might merge, a claim that Mr. Peete does not appear to be asserting in this proceeding. (ECF No. 9-1, Exhibit 24, ¶ 33). But the Eleventh Circuit did not rely on res judicata with respect to Mr. Peete's arguments that his trial counsel was ineffective in (1) failing to adequately prepare for trial; and (2) coercing him into pleading guilty to avoid the consequences of her unpreparedness. Instead, the Eleventh Appellate District proceeded directly to considering the merits of those arguments. (ECF No. 9-1, Exhibit 24, ¶¶ 31-32). The Ohio Supreme Court then declined to accept jurisdiction without explanation, leaving the Eleventh Appellate District's opinion as the last explained decision.

21

*Ylst*, 501 U.S. at 805.

Because the Ohio courts did not apply a procedural bar to Mr. Peete's ineffective assistance of counsel claim, Mr. Peete has not procedurally defaulted the claim. *See Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013) (holding that petitioner did not procedurally default on claim where state courts did not unambiguously rely on state procedural bar); *Bowling v. Parker*, 344 F.3d 487, 498-99 (6th Cir. 2003) (same). I therefore recommend the Court hold that Mr. Peete has not procedurally defaulted on ground one.

### 2.  *Merits*

A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Under the first prong, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The *Strickland* standard is "extremely deferential" because "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Kelly*, 846 F.3d at 829 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Id*. (quoting *Strickland*, 466 U.S. at 687).

22

*Strickland* applies at the guilty plea stage. Indeed, the Supreme Court has held that, "[b]efore deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). To prevail on a *Strickland* claim in the guilty plea context, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

"In the Sixth Circuit, a petitioner 'cannot make that showing merely by telling [the court] now that she would have gone to trial then if she had gotten different advice.'" *Shimel v. Warren*, 838 F.3d 685, 698 (6th Cir. 2016) (quoting *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012)). Instead, the petitioner must demonstrate that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. The test is an objective one, made "without regard for the idiosyncrasies of the particular decisionmaker." *Hill*, 472 U.S. at 59-60 (quotations omitted). "The rationality of such a rejection is typically based on multiple factors, including the strength of the evidence against a defendant, the lack of viable defenses, and the benefits of the plea bargain." *Plumaj v. Booker*, 629 F. App'x 662, 667 (6th Cir. 2015) (citing *Pilla*, 668 F.3d at 373).

Mr. Peete argues that his trial counsel was ineffective in failing to adequately prepare for trial and for falsely representing the strength of the State's case. He argues that his trial counsel failed to conduct the investigation necessary to develop his theory of self-defense, and he also argues that his trial counsel fraudulently misrepresented to him that if he proceeded to trial, he could be sentenced to death. He further argues that his trial counsel's ineffectiveness is demonstrated by the fact that she was sanctioned for her conduct in another

matter occurring at the same time, resulting in her receiving a stayed suspension of one year. Mr. Peete also asserts that his trial counsel ultimately lost her license to practice law.

As noted above, the Eleventh Appellate District addressed the merits of those arguments in affirming the trial court's denial of Mr. Peete's motion to withdraw his guilty plea. Where the state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d). *Perkins v. McKee,* 411 F. App'x 822, 828 (6th Cir. 2011). The Sixth Circuit has emphasized the double layer of deference that federal courts must give state courts in reviewing federal ineffective assistance of counsel claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. … An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. … Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Id*. (quoting *Harrington,* 131 S.Ct. 770, 786-88).

The Eleventh Appellate District held the following in rejecting Mr. Peete's argument that his appellate counsel was ineffective in failing to adequately prepare for trial and in allegedly misrepresenting the strength of the prosecution's case:

> {¶31} In regard to his first assertion, appellant established that, approximately a year after his case ended, trial counsel was sanctioned by the Supreme Court of Ohio for not attending scheduled hearings in a civil case and that his case was pending at the same time.

> {¶32} However, it does not follow that counsel was therefore unprepared for trial in appellant's case. Similarly, his conclusory statement that counsel "lied" to him

regarding the strength of the state's case and that a better deal would not be forthcoming, are not required to be given weight. *Conteh*, 2009-Ohio-6780 at ¶15.

(ECF No. 9-1, Exhibit 24).

Applying the doubly-deferential standard of review, the Eleventh Appellate District did not err in rejecting Mr. Peete's ineffective assistance of counsel claim. As the Eleventh Appellate District recognized, the fact that Mr. Peete's trial counsel was ultimately sanctioned in another matter occurring around the same time does not establish that counsel was ineffective in this proceeding. Mr. Peete also has not established that his trial counsel's assessment of his chances at trial was incorrect given the gravity of the charges against him, which included aggravated murder.

Even assuming that the performance of Mr. Peete's trial counsel was deficient, I conclude that Mr. Peete has failed to demonstrate the necessary prejudice from those deficiencies. In particular, Mr. Peete has not "established a reasonable probability that, but for counsel's advice to plead guilty, [he] would have gone to trial." *Shimel*, 838 F.3d at 698. Instead, Mr. Peete has offered only his own after-the-fact assertions that he was prepared to proceed to trial and pursue a theory of self-defense. But Mr. Peete has not "proven that there is a reasonable probability that the presentation of a . . . theory of self-defense at trial would have resulted in a better outcome" for him than the plea he accepted, which resulted in the aggravated murder charge being reduced to first-degree murder and the removal of the firearm specifications. *Id*. Accordingly, I recommend that the Court reject Mr. Peete's ineffective assistance of counsel claim.

**B.** **Ground Two: Lack of a Knowing, Intelligent, and Voluntary Plea**

In his second ground, Mr. Peete asserts that his guilty plea was not knowing, intelligent, and voluntary, and thus did not comport with constitutional due process

requirements. The Warden again argues that Mr. Peete procedurally defaulted on his claim and that the claim fails on the merits.

### 1. Procedural Default

The Warden argues that Mr. Peete procedurally defaulted on his claim that his guilty plea was not knowing and voluntary because the Eleventh Appellate District held that Mr. Peete's claim was barred by res judicata. To the extent Mr. Peete bases his habeas claim on: (1) the trial court's alleged failure to inform him of the aggregate maximum penalty for all charges; or (2) the alleged failure to place the terms of his plea on the record in open court, I agree.

In affirming the denial of Mr. Peete's motion to withdraw his guilty plea, the Eleventh Appellate District held that Mr. Peete could have argued on direct appeal that he was not informed of the maximum aggregate penalty he faced but failed to do so. (ECF No. 9-1, Exhibit 24). The trial court thus held that Mr. Peete's argument was "barred from consideration under res judicata." *Id.* at ¶ 19. As set forth above, because the Ohio courts actually applied a res judicata bar to this argument, Mr. Peete has procedurally defaulted on it. *See Wogenstahl*, 668 F.3d at 341; *Monzo*, 281 F.3d at 577. The same is true of Mr. Peete's argument that the terms of his plea agreement were not stated on the record in open court. In rejecting Mr. Peete's assignment of error, the Eleventh Appellate District held that "any error in this regard could have been, but was not, raised on direct appeal. It is therefore barred by res judicata." (ECF No. 9-1, Exhibit 24, ¶ 26).

And, while the Eleventh Appellate District went on to address both arguments on the merits, the Warden correctly argues that a state court's decision to address an argument on the merits as an alternative to a state procedural bar does not eliminate the procedural default. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the

merits of a federal claim in an alternative holding"); *Rogers v. Skipper*, 821 F. App'x 500, 503 (6th Cir. 2020) ("Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative."). Finally, Mr. Peete has not argued that cause and prejudice exist to excuse his default. I therefore recommend that the Court hold that Mr. Peete has procedurally defaulted on his claim that his plea was not knowing and voluntary because the trial court failed to inform him of the maximum sentence he faced. In an abundance of caution, however, I will consider the merits of both arguments as well.

I again reach a different conclusion, however, with respect to Mr. Peete's argument that the ineffective assistance of his trial counsel rendered his plea unknowing and involuntary. As noted above, the Eleventh Appellate District did not rely on res judicata or another procedural bar to dispose of that argument. Instead, the Eleventh Appellate District proceeded directly to the merits. Accordingly, I recommend that the Court hold Mr. Peete has not procedurally defaulted on this claim.

### 2. Merits

"Generally, a voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction." *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012) (internal quotations omitted). This is so because:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Therefore, "after the entry of an unconditional plea, a defendant may only attack the court's jurisdiction and the voluntary and intelligent character of the plea itself." *Werth v. Bell*, 692 F.3d 486 (6th Cir. 2012). Significantly, "guilty pleas 'not only must be voluntary

but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). The validity of the plea must be determined from the "totality of the circumstances." *Abdus-Samad v. Bell*, 420 F.3d 614, 631 (6th Cir. 2005) (citing *Brady*, 397 U.S. 747).

When a habeas petitioner challenges the validity of his plea, "the state generally satisfies its burden [to show that the plea was voluntary and intelligent] by producing a transcript of the state court proceeding," *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The state court's factual finding that the plea was proper is accorded a presumption of correctness unless the transcript is inadequate to show that the plea was voluntary and intelligent. *Id*. at 326-327; *see* U.S.C. § 2254 (e)(1). The petitioner must overcome a heavy burden if a federal habeas court is to overturn a state court finding that he made a knowing and voluntary plea. *Parke v. Raley*, 506 U.S. 20 (1992); *Dunn v. Simmons*, 877 F.2d 1275 (6th Cir.1989).

Mr. Peete argues that his plea was involuntary for three reasons: (1) the trial court failed to inform him of the maximum possible sentence in violation of Ohio Crim. R. 11(C)(2); (2) the terms of his plea were not stated on the record in open court in violation of Ohio Crim. R. 11(F); and (3) his trial counsel was constitutionally ineffective in violation of *Strickland*.

Mr. Peete's first two arguments relate to questions of state procedural law, and a federal reviewing court is bound by state court interpretations of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a

federal court sitting in habeas corpus.") Here, the Eleventh Appellate District expressly held that the trial court proceedings did not violate either Ohio Crim R. 11(C)(2) or Rule 11(F). With respect to Ohio Crim R. 11(C)(2), the court held that the rule "does not mandate that the defendant be advised of the aggregate maximum should consecutive sentences be imposed, but it requires the court to inform of the maximum penalty for each count," and that the trial court "informed [Mr. Peete] of the maximum penalty for each charge as required." (ECF No, 9-1, Exhibit 24, ¶ 20). Similarly, with respect to Ohio Crim R. 11(F), the Eleventh Appellate District held that the rule is "satisfied when the underlying terms of promises that delineate the agreement upon which the plea is based is stated in open court." *Id*. at ¶ 21. The court also held that, while the fact that Mr. Peete agreed to plead guilty in return for a jointly recommended sentence was not stated in open court, Mr. Peete did not suffer any prejudice because it was implicit in the plea and the trial court imposed the jointly recommended sentence. *Id*. at ¶¶ 26-27. I defer to the Eleventh Appellate District's interpretation of Ohio procedural rules.

With respect to Mr. Peete's ineffective assistance of counsel argument, I conclude that he has not satisfied his heavy burden of overcoming the state trial court's finding that his plea was knowing and voluntary. The Warden included the transcript of the plea hearing in the record, and argues that the transcript of the plea hearing demonstrates that Mr. Peete's plea was voluntary and intelligent. I agree. During the plea hearing, the trial court and Mr. Peete engaged in the following colloquy:

> THE COURT: I have before me what's called a Finding on Guilty Plea to the Indictment, we refer to in the courtroom here as a plea agreement. Has anybody threatened you to enter into this plea agreement?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Anybody promise you anything special if you plead today?

THE DEFENDANT: No, sir.

THE COURT: All right. On the next to the last page of this document there's a signature above your name; is that your signature?

THE DEFENDANT: Yes, sir.

THE COURT: Any reason why we can't proceed to accept your plea and go on to sentencing?

THE DEFENDANT: No, sir.

(ECF No. 9-2, 3:9-23). The trial court continued:

THE COURT: Have you read this plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Have you reviewed it with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions about it?

THE DEFENDANT: No, sir.

THE COURT: Have you had enough time to consult with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Has your attorney answered all your questions for you?

THE DEFENDANT: Yes, sir.

THE COURT: Have you reviewed the indictment and the discovery provided by the state of Ohio with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: There's no motions pending at this time; correct?

MR. BECKER: None that would require an evidentiary hearing, no.

THE COURT: Are you satisfied with your attorney?

THE DEFENDANT: Yes, sir.

(ECF NO. 9-2, 4:19-5:21).

The trial court then asked Mr. Peete whether he understood the elements of each offense to which he was pleading guilty, as well as the penalties associated with each offense. (ECF No. 9-2, 5:22-10:9). The trial court then had the following exchange with Mr. Peete:

> Mr. Peete, do you understand by pleading here today you're going to be making a complete admission that you committed all of the allegations contained in Counts 1 through 6?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand the Court may enter a plea and impose whatever sentence it deems appropriate regardless of the agreed sentence you have with the state of Ohio?
>
> THE DEFENDANT: Yes, sir.

Based on a careful review of the transcript of the plea hearing, I conclude that Mr. Peete has not satisfied his heavy burden of overturning the trial court's finding that the plea was knowing and voluntary. Mr. Peete expressly averred that he understood the charges against him, that he was satisfied with his counsel's performance, and that he was pleading guilty of his own volition. While Mr. Peete now argues that his trial counsel coerced him into accepting the plea, he offers only his own statements, which are inconsistent with the plea colloquy. *See Welly v. Ohio*, No. 3:17-cv-0600, 2018 WL 6702902, at *10 (N.D. Ohio Nov. 20, 2018), *report and recommendation adopted*, 2018 WL 6696987 ("In light of what [petitioner] said at the time he pleaded guilty, his claim that his counsel coerced him into pleading guilty is insufficient to overcome the presumption of truthfulness which attaches to statements made during the plea colloquy."). I therefore recommend that the Court deny Mr. Peete's habeas petition with respect to his second ground.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. **Legal Standard**

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not

appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B. Analysis**

Mr. Peete has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the DENY Mr. Peete's petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also recommend that the Court not grant him a certificate of appealability.

Dated: July 28, 2023

*s/Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

33

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).